IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | |
| | | Case No.: RDB-20-330 |
| TROY LEE NEAL, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Pending before the Court is defendant Troy Lee Neal's Emergency Motion to Reopen Detention Hearing and Set Conditions of Release, pursuant to 18 U.S.C. § 3142(f) and (g). ECF 47. The government filed an opposition. ECF 51. Mr. Neal filed a reply. ECF 54. No hearing is necessary. Although Mr. Neal did not move for temporary release under 18 U.S.C. § 3142(i), I find release under that provision appropriate because, given Mr. Neal's medical conditions, the current COVID-19 outbreak at the Chesapeake Detention Facility (CDF) is a "compelling reason" for temporary release. Therefore, the defendant's motion under 18 U.S.C. § 3142(f) and (g) is denied, but he is ordered temporarily released from U.S. Marshals' custody pursuant to 18 U.S.C. § 3142(i).

### Procedural Background

Mr. Neal has been charged by indictment with conspiracy to distribute and possess with intent to distribute 500 grams or more of cocaine and 280 grams or more of cocaine base in violation of 21 U.S.C. § 846, and possession with intent to distribute 493.9 grams of cocaine in violation of 18 U.S.C. § 841(a)(1). On November 16, 2020, Mr. Neal appeared for his initial appearance on the indictment and Magistrate Judge J. Mark Coulson entered an order of temporary detention. ECF 29.

On November 25, 2020, Mr. Neal appeared before me for a detention hearing and arraignment. ECF 40 & 41. I found by clear and convincing evidence that there was no condition or combination of conditions that would reasonably assure community safety, and I entered an Order of Detention. ECF 42. As grounds for my decision, I cited the rebuttable presumption of detention, the large amount of cocaine recovered during the search of Mr. Neal's home (493.9 grams), his three prior controlled substances convictions, his prior convictions for violations of probation, and his lack of employment history. At the time of the detention hearing, I had been advised and was under the impression that CDF officials had implemented measures sufficient to protect individuals in their care and custody from COVID-19. Additionally, although there had been several reported cases of COVID-19 among CDF staff and detainees, they appeared contained and isolated. There certainly was no COVID-19 outbreak inside the jail at the time.

On February 11, 2021, Mr. Neal filed the pending emergency motion for release from custody. ECF 47. As grounds for release, he cites the current COVID-19 outbreak at CDF and his underlying health conditions that make him at risk of serious illness if he were to contract the disease. The government opposes the motion, arguing CDF has the COVID-19 outbreak under control and Mr. Neal remains a danger to the community because he may continue drug-trafficking if released.

## Discussion

Mr. Neal filed his motion under 18 U.S.C. § 3142(f) and (g). Because I find temporary release under Section 3142(i) appropriate in this case, I will not address the arguments under subsections (f) and (g). I do note, however, that when I entered the detention order, I was advised that CDF had employed reasonably sufficient measures to prevent the virus from entering and

spreading throughout the facility, an assurance that factored into my decision. We now know that those measures, however reasonable, were ineffective.

Section 3142(i) provides:

> The judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason.

18 U.S.C. § 3142(i). When considering temporary release under § 3142(i) due to COVID-19, the Court considers

> the severity of the risk that the COVID-19 virus poses to the defendant, given his existing medical conditions and the current COVID-19 situation at the facility where he is being held, and whether that risk, balanced against the other Bail Reform Act factors, rises to the level of a 'compelling reason' for temporary release under 18 U.S.C. § 3142(i).

*United States v. Creek*, No. 20-4251 (4th Cir. Apr. 15, 2020), ECF No. 402 in *United States v. Creek*, No. CCB-19-36 (D. Md.). "The defendant bears the burden of demonstrating a compelling reason." *United States v. Creek*, No. CCB-19-36, 2020 WL 2097692, at *3 (D. Md. May 1, 2020). Courts that have considered temporary release under § 3142(i) during the pandemic have "recognized that, in deciding whether temporary release is warranted, the court must still consider the danger to the community or risk of flight that would be posed by the defendant's release as analyzed under the factors set forth in 18 U.S.C. § 3142(g)." *Id.*

In determining whether a defendant should be released or detained pending trial, the Bail Reform Act requires that the Court consider the nature and circumstances of the offense charged; the weight of the evidence; the history and characteristics of the person, including criminal history; whether, at the time of the current offense, the person was on probation or parole; and the nature and seriousness of the danger to any person or the community that would be posed by the person's release. *See* 18 U.S.C. § 3142(g).

Mr. Neal, 42, is a lifelong Maryland resident. He has daily contact with his niece and proposed third-party custodian Shakyra Webster, his mother, brother, sister, and children. With the exception of two children, his entire family lives in Maryland. He does not have a passport and has never traveled outside the country. Mr. Neal has a history of drug abuse. Before he was detained, he used cannabinoids and cocaine daily, Percocet weekly, and other controlled substances and alcohol occasionally.

Before his detention in June 2020, Mr. Neal was unemployed since 2018. Before that, he worked for a year as a truck driver, but he lost his job after his automobile insurance was cancelled due to a motor vehicle accident. He has no assets or liabilities.

Mr. Neal's criminal history includes two CDS manufacturing/distribution convictions in 1997 and 2003; three violations of probation between 1997 and 2003; and various traffic offenses since 1999. He has failed to appear for court eight times. He has never been charged with a crime of violence or firearm offense. Most of his convictions, including all of his CDS-related convictions, are over ten years old. Other than a 2014 conviction for speeding, he has not been convicted of a crime since 2008. He was not on probation or parole at the time of this alleged offense.

Mr. Neal and his co-defendant have been charged with conspiracy to distribute 500 grams or more of cocaine and 280 grams or more of cocaine base and possession with intent to distribute 493 grams of cocaine. The evidence includes surveillance and more than 400 grams of cocaine seized from Mr. Neal's home pursuant to a search warrant. If convicted of Count One, Mr. Neal faces a mandatory minimum sentence of 10 years' incarceration.

The danger to the community posed by Mr. Neal's release is continued drug-trafficking, a serious potential danger. However, Mr. Neal is not charged with a firearms offense or a crime of

violence.  The government does not allege that he or his co-defendants possessed or used firearms in connection with their alleged drug-trafficking.  Furthermore, Mr. Neal has never been charged with a violent crime or firearms offense.

Mr. Neal has several significant health conditions that may increase his risk of serious illness if he contracts COVID-19.  According to CDF medical records, Mr. Neal has asthma for which he is prescribed an albuterol inhaler.  He also has hypertension, which requires medication.  The Centers for Disease Control and Prevention (CDC) advise that people with moderate to severe asthma or hypertension "might be at an increased risk of severe illness from the virus that causes COVID-19."[1]  Additionally, Mr. Neal has sleep apnea for which he requires a CPAP machine.  Recent studies have linked sleep apnea to increased risk of COVID-19.[2]  Finally, Mr. Neal's weight and height qualify him as clinically obese.  People with obesity or severe obesity "are at increased risk of severe illness from the virus that causes COVID-19."[3]

The government argues that Mr. Neal's "medical records do not show an emergency" or that he "has been in poor health or in physical distress."  Gov't Opp'n 2 & 3.  These arguments miss the point.  To establish a compelling reason for temporary release under *Creek*, I am not required to find an urgent need for medical care.  Rather, I must consider Mr. Neal's existing

---

[1] *See COVID-19: People with Certain Medical Conditions*, Feb. 3, 2021, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

[2] Matthew Gavidia, *Obstructive Sleep Apnea Linked With Higher Risk of COVID-19 Hospitalization, Complications*, Jan. 18, 2021, https://www.ajmc.com/view/obstructive-sleep-apnea-linked-with-higher-risk-of-covid-19-hospitalization-complications; Alejandra Lastra, *Wake Up to Sleep Apnea as a COVID-19 Risk*, Dec. 8, 2020, https://www.usnews.com/news/health-news/articles/2020-12-08/sleep-apnea-an-overlooked-covid-19-risk-factor.

[3] *See COVID-19: People with Certain Medical Conditions*, Feb. 3, 2021, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

medical conditions and the severity of the risk that COVID-19 poses to him given his health conditions. Mr. Neal's medical conditions—obesity, sleep apnea, asthma, and hypertension—increase his risk of severe illness from COVID-19.[4]

I now consider the conditions at CDF relating to COVID-19. There is currently a COVID-19 outbreak at CDF. The outbreak began in early January 2021. On February 3, 2021, the Baltimore Sun reported that 132 inmates at CDF "tested positive in the past month — or one in three of the roughly 400 inmates there." Tim Prudente & Phillip Jackson, *Outbreak of COVID-19 at Baltimore federal jail prompts lockdown even as feds prepare to resume grand jury proceedings*, Balt. Sun, Feb. 3, 2021 *available at* https://www.baltimoresun.com/news/crime/bs-md-ci-cr-federal-prison-coronavirus-20210203-trvhsshvtzgdvhj52l7dc5yn2a-story.html. As of February 15, 2021, the number of COVID-19 positive inmates had risen to 169, and there were 80 COVID-19 positive staff members. *COVID-19 Case Count*, Md. Dept. Pub. Safety & Correctional Servs. (last updated Feb. 15, 2021), *available at* https://news.maryland.gov/dpscs/covid-19/. Last week, CDF reported an additional 13 positive tests among detainees and staff. Pandemic Daily Report for Feb. 18, 2021, Gov't Opp'n Ex. 2, ECF 51-2. Although these numbers indicate a decline in the number of newly positive detainees, that alone does not convince me that the facility can contain the current outbreak or prevent another outbreak.[5]

---

[4] About four months ago, Mr. Neal contracted COVID-19 while in state custody on related charges. I do not believe the disease caused serious illness, and fortunately, he recovered. Even so, Mr. Neal remains at risk of contracting the disease again, and he may not be as fortunate next time.

[5] The government attaches a January 21, 2021 Memorandum from CDF Warden Calvin Wilson to Deputy Commissioner Dionne Randolph, in which the Warden identifies steps the facility took after the outbreak became apparent. Gov't Opp'n Ex 1, ECF 51-1. One month later, the facility continues to report positive results for staff and detainees.

As I consider the extent of the COVID-19 outbreak, I also consider whether there is an imminent end in sight to this crisis. As far as I can tell, there is not. The measures taken to protect staff and detainees did not work. Even if this crisis is abated, another one may loom. As we have learned, the virus does not follow any rules we may impose. It has spread aggressively throughout prisons and jails across the country, resulting in 382,048 positive cases and 2,310 deaths among detained people. Confirmed COVID-19 Cases and Deaths in US Correctional and Detention Facilities By State, Feb. 12, 2021 https://covid.cdc.gov/covid-data-tracker/#correctional-facilities. The only way to end the current crisis and prevent a future one is to vaccinate CDF staff and detainees. I understand staff have been offered vaccinations, as they should, but detainees have not, even though, as residents of a congregate facility, they appear to qualify for vaccination under the State of Maryland's vaccine prioritization. *See* https://covidlink.maryland.gov/content/vaccine/ (listing "congregate facilities" in Phase 1B). In my view, the COVID-19 outbreak at CDF is not under control, and even if reasonable minds could disagree on that point, there is reason to believe that another outbreak may occur if this one subsides.

I next consider whether there are conditions of release that might mitigate the risk that Mr. Neal will engage in drug-trafficking if released. I find there are. Mr. Neal's niece, Shakyra Webster, lives in North East, Maryland with her four-year-old daughter and works as a registered nurse. She has no criminal history. She owns a single-family home where she has room for her uncle to quarantine. She will support him financially. Although Pretrial Services opposes Mr. Neal's release, it has approved Ms. Webster as a suitable third-party custodian and recently confirmed her willingness to do so. To further mitigate the risk of continued drug-trafficking, I will impose the condition of home confinement subject to location monitoring. These conditions will reasonably assure me that Mr. Neal will not pose a danger to the community.

Mr. Neal's motion under 18 U.S.C. § 3142(f) is denied, but he is ordered temporarily released from U.S. Marshals' custody pursuant to 18 U.S.C. § 3142(i). A status hearing will be held on April 12, 2021 at 9:30 a.m. to discuss Mr. Neal's compliance with the temporary release conditions, the conditions at CDF, and whether he should remain on the same release conditions until trial.

## **ORDER**

For the reasons stated in this Memorandum Opinion and Order, it is, this 22nd day of February, 2021, hereby ORDERED that Troy Lee Neal's Emergency Motion to Reopen Detention Hearing and Set Conditions of Release, ECF 47, is denied, but he is ordered temporarily released from U.S. Marshals' custody pursuant to 18 U.S.C. § 3142(i). A separate order setting conditions of temporary release will issue.

                    /S/
       Deborah L. Boardman
       United States Magistrate Judge